# CHARLESTON

## ICE v. MAXWELL *et al.*

Submitted June 15, 1906.   Decided December 4, 1906.

1.  BROKERS—*Sale of Real Estate—Compensation.*

    Where an agent is empowered to procure a purchaser for real estate within a stipulated time, and is to receive a certain compensation for his services, he will not be entitled to recover such compensation unless he furnishes a purchaser within that time. (p. 11.)

2.  SAME.

    But where the owner or principal has waived the performance of the contract within the time agreed upon, and accepts the services of the agent and recognizes and treats the contract as still in force, the agent will be entitled to compensation. (p. 11.)

3.  SAME—*Question for Jury.*

    Where there is evidence showing or tending to show that the time within which a contract was to have been performed has been waived, or that the contract has been continued, the question should be submitted to the jury. (p. 12.)

4.  SAME—*Waiver of Conditions of Contract.*

    Where the contract is thus continued, or the time within which the sale was to have been made is waived, without reference to the agent's compensation, the presumption is that he is entitled to recover the sum originally agreed upon. (p. 12.)

5.  SAME.

    If an agent is empowered to procure a purchaser for real estate at a certain price, and for his services is to receive a stipulated compensation, such agent will be entitled to recover the compensation fixed, where he procures a purchaser with whom the owner negotiates a sale, although the owner may accept a less sum than that at which he authorized the agent to make sale. (p. 12.)

6.  PRINCIPAL AND AGENT—*Compensation.*

    To entitle an agent to recover for services rendered, it is not necessary to show an express request. A request may be implied from all the facts and circumstances of the case. (p. 15.)

7.  ESTOPPEL.

    Ordinarily, if one labors for another, or renders him services in his business from which the owner received a benefit, and the one who receives the services stands by and sees what is being done without making objection, he is estopped to deny that the services were rendered at his request. (p. 19.)

8.  PRINCIPAL AND AGENT—*Acts of Agents.*

    If a person acts as agent without authority, and his acts are ratified, he is entitled to compensation the same as though he had been duly authorized. (p. 19.)

Error to Circuit Court, Randolph County.

Action by E. Clark Ice against W. B. Maxwell and others. Judgment for plaintiff, and defendants bring error.

*Reversed, and New Trial Granted.*

BENT & SPEARS and THOMAS R. HORNER, for plaintiffs in error.

HARDING & HARDING, for defendant in error.

SANDERS, JUDGE:

This is an action of *assumpsit*, brought in the circuit court of Randolph county by E. Clark Ice against W. B. Maxwell, E. P. Loudin, William Flint and Arnold Cunningham. To a judgment dismissing the action, the plaintiff applied for and obtained a writ of error.

The plaintiff assigns as error the giving of three certain instructions for the defendants, and that the verdict is contrary to the law and the evidence.

By instruction number one, the jury were, in effect, told if they believed from the evidence that a contract was entered into between the plaintiff and defendants, in December, 1902, by which the latter agreed to pay to the plaintiff five hundred dollars provided he would furnish a purchaser for the Achelles and Stockbridge lands at thirty dollars per acre, and provided further that he would furnish such purchaser prior to the 28th day of February, 1903, or before the defendants should themselves sell the land to a purchaser other than the one furnishsd by the plaintiff, and that the plaintiff failed to furnish the purchaser within said time, or to notify the defendants that he had made sale of the property, that they should find for the defendants.

Instruction number two in effect presents the same question as is presented by instruction number one. Therefore, they may be disposed of together.

The objection insisted upon is that these instructions are binding, and by them it is made imperative that the plaintiff furnish a. purchaser at thirty dollars per acre before the 28th day of February, 1903, and that unless the jury believe from the evidence that such purchaser was furnished within that time, or the defendants notified of such purchaser, then they should find for the defendants.

Maxwell and Cunningham had the agency to sell about sixteen hundred acres of land in Randolph county from the owners, Stockbridge and Achelles. This agency was to expire on the 28th day of February, 1903. After having procured the agency, Maxwell solicited the plaintiff

to find a purchaser for the land, and they had some conversations in regard to it, but without coming to any definite conclusion. Later the defendant Cunningham, in the presence of Maxwell, also requested the plaintiff to find them a purchaser. It was finally agreed that the plaintiff would undertake to do so, and in consideration thereof he was to be paid the sum of five hundred dollars. The time within which the purchaser was to be furnished is in dispute. The defendants claim that it was to have been done before the 28th day of February, 1903, while the plaintiff claims that the time was not limited. The defendants also claim that the purchaser to be furnished was one who would buy the land at the price of thirty dollars per acre, while the plaintiff claims that he was only to price it to prospective purchasers, and that the defendants were to finally agree with them as to the purchase price of the property. The plaintiff's agency was not exclusive. He had only to put prospective purchasers in communication with Maxwell and Cunningham, who were to conduct all negotiations in consummating the purchase, and were to show the land.

It is undisputed that the purchasers for the property were not furnished prior to the 28th day of February, 1903. On the 27th day of February, before the agency expired, the defendants purchased the property. After this time, and about the 11th of March, the plaintiff introduced to the defendants, Maxwell and Cunningham, parties who, a few days afterwards, entered into a contract for the purchase of the land in question, at the price of twenty-seven dollars per acre.

In view of these facts, should the jury have been told that unless the plaintiff found a purchaser at the price of thirty dollars per acre, before the 28th day of February, 1903, they should find for the defendant? While it is true there is a conflict in the evidence upon these points, and the jury may have found that the plaintiff contracted to furnish a purchaser at thirty dollars per acre before the 28th day of February, yet in the light of all the evidence and circumstances in the case, it is contended that these instructions misconceive the case and fall short of presenting it to the jury in its entirety, and that inasmuch as they are binding, and direct a verdict for the defendants, that this should not have

been done. ·Where an agent contracts to furnish a purchaser·
for lands at a stipulated price, and such agent does furnish.
a purchaser whom the owner accepts, and. in the negotiation
of the transaction the owner agrees upon and accepts a dif--
ferent price from that at which the agent was instructed to·
sell, still such agent would be'entitled to his compensation.
It cannot be said that where an agent has procured a pur-
chaser for a piece of property, that the owner can deprive.
him of his commission or compensation by accepting such
purchaser and agreeing to take a less sum than the agent
agreed to furnish the purchaser for. "If an agent with
authority to sell on a a certain commission, in the event of
a sale procures a purchaser at the price and on the terms.
authorized, who would take the property at the price, and
the owner 'of the property steps in, ignores the agent and sells.
to the purchaser so .secured, at the same price and on the
same terms, or for a less price, and on the terms proposed
to the purchaser by the agent, even if they were different
from the terms stipulated in the authority to sell, the owner
is liable to pay to the agent the amount of commission stip-
ulated to be paid. He will not be permitted to take ad-
vantage of the negotiations made with the purchaser by the
agent, and then escape the liability to pay him the stipulated
commission." *Reynolds* v. *Tompkins*, 23 W. Va. 235. "If·
the agent introduces the purchaser, or gives his name,
whereby the sale is effected, although the sale be perfected
by the principal, and even though the owner vary the terms.
from the first negotiation, he will be entitled to compensa-
tion." *Beauchamp* v. *Higgins*, 20 Mo. App. 514. "Where
by a special contract, a broker is not to be paid commis-
sions unless he sells the property at a stipulated price, the
sale by him at such a price is a *condition precedent* to his.
right to compensation, unless pending the negotiations and
whilst the agency remains unrevoked, the owner consents to·
a sale at a different price. If a broker introduces the pur-
chaser or discloses his name to the seller, and through such
introduction or disclosure negotiations are begun and the
sale of the property is effected, the broker is entitled to his
commissions, although, in point of fact, the sale may have
been made by the owner. Where property is sold at a par--
ticular price with the consent of the owner, the broker who·

effected the sale is entitled to his commissions, although he may not have been requested by the owner to sell at that price, under an agreement to pay commissions." *Jones* v. *Adler*, 84 Md. 440; *Beauchamp* v. *Higgins*, 20 Mo. App. 514; *Hines* v. *Henry*, 36 N. J. L. 328; Clark & Skyles on Agency, section 773, p. 1665, citing numerous cases. "As to whether the services rendered by an agent in any particular case amounts to such performance as will entitle him to commissions or compensation must be determined from the facts and circumstances of the case." Clark & Skyles on Agency, section 771, p. 1657.

The jury should not have been told that the plaintiff, to entitle him to recover, should have produced a purchaser who was willing to pay thirty dollars an acre for the land. But this would probably be harmless error if that part of the instruction is correct which says that the purchaser must be furnished before the 28th day of February, because in that event, if the purchaser were not furnished within that time, the plaintiff's right to maintain an action would be barred, and in no event could he recover. A party undoubtedly has the right, in creating an agency for the sale of lands, to fix the life of the agency, and when this is done, or where the agent is given a certain time within which to make a sale, his right to make such sale does not extend beyond that period, unless the time within which it is to be done is waived, or the contract is continued, expressly or impliedly. It is a condition precedent to the recovery of compensation for the plaintiff's services that he make the sale within the time stipulated, and unless he perform this condition, he cannot recover. "If the contract of employment between the broker and the principal provides that the undertaking shall be performed within a limited time, the broker is not entitled to nor can he demand commission for his services not accomplished by him within that time." Clark & Skyles on Agency, section 778, p. 1679. Innumerable cases could be cited to this effect, as this is the universal doctrine.

But while this is the rule, it does not apply in this case, because there is evidence tending to show that the plaintiff was permitted to continue in the employment of the defendants after the 28th day of February, and that he was after that time recognized as their agent. He states that he talked

to Mr. Maxwell frequently in regard to the matter, and that it went along until up in the spring some time, or about the first of March, and one time he was talking to Mr. Maxwell, who notified him that the defendants were in a hurry to sell the land, and said they had to raise about sixteen thousand dollars, and about the 11th of March he produced the purchasers. This conversation was evidently after the defendants had become the owners of the land. If they had, at this time, nothing but an agency, it would not have been necessary for them to have secured this sum of money. Furthermore, at the time the purchasers were actually furnished, Maxwell and Cunningham said nothing to Ice by which he could infer that his agency was not continuing, but they accepted the purchasers furnished by him, thereby accepting the fruits of his labors. Ice says that Loudin told him after the contract of sale was made that he and his associates would pay the five hundred dollars as soon as the money from the transaction was received by them. Also, Maxwell told the plaintiff that they were not treating him just right about it, and said he understood that the plaintiff was entitled to five hundred dollars for making the sale. Maxwell states that it was agreed among the defendants long after the sale was made that the plaintiff was entitled to one hundred dollars for his services. None of the defendants who testified denied this. After the sale was made and before the deeds were delivered, Ice went to Maxwell and secured from him one hundred and twenty-five dollars, stating that the amount could be taken out of his commissions. These facts tend to show that the contract was continued, and that the defendants waived performance of it at the time at which they claim it should have been performed. The agency of Cunningham and Maxwell only extended until the 28th of February, and for this reason they probably wanted to sell by that time, but on the day previous to the time at which their agency would have expired, they, together with the other defendants, became the owners of the land, and from that time they were still desirous of selling, and all these facts and circumstances should be considered by the jury in determining whether the time was waived and the contract continued.

We intimate no opinion as to what these facts establish,. because the case must be remanded for retrial, but we have briefly related certain of the facts to show that there is evidence tending to establish the fact that the contract was continued, and the time for performance thereby waived. If the contract was continued, or the defendants waived the performance of it within the stipulated time, the presumption of law is that the plaintiff was to receive the same compensation as provided for by the contract originally made. "If an agent employed at a compensation for a definite term, continues in the principal's service after the expiration of that term, without any new or other arrangement, he will be presumed to be continuing on the old terms and there can be no recovery on a *quantum meruit.*" Mechem on Agency, section 608. *Wallace* v. *Floyd*, 29 Pa. St. 184; 72 Am. Dec. 620; *Ranck* v. *Albright*, 36 Pa. St. 367. "If an agent, employed at an agreed price for a certain time, continues in the same employment after the expiration of the term without any new agreement, the presumption of law is that he continues at the original rate of compensation, and there can be no recovery upon a *quantum meruit.*" 1 Am. & Eng. Ency. Law, p. 1116. *Spence* v. *Wilmington Cotton Mills*, 115 N. C. 210; *Doty* v. *Case & Willard Co.*, 50 Hun. (N. Y.) 595; *N. H. Iron Foundry Co.* v. *Richardson*, 5 N. H. 294; *Tatterson* v. *Suffolk Mfg. Co.*, 106 Mass. 86; *Sines* v. *Supts. of the Poor*, 58 Mich. 503; *Standard Oil Co.* v. *Gilbert*, 84 Ga. 714. "Where an agent has been employed for a specified time at a specified compensation, and after his term of employment has expired continues to render services to his principal, in the same line of business as formerly, in the absence of a special agreement otherwise, it will be presumed that he intended to continue in the service at the previous rate of compensation, and he will not be permitted to recover on a *quantum meruit.*" Clark & Skyles on Agency, section 354, p. 809.

Consequently, under these authorities, and under the facts and circumstances of this case, the court should not have limited by its instructions the time within which the plaintiff was to furnish such purchaser to the 28th of February, but the question should have been left to the jury to determine whether or not it was continued beyond that time, or

whether the defendants waived the time within which such
purchaser should be furnished, and if they should find that
the contract was continued, or the time for its performance.
waived, then the compensation to which the plaintiff would
be entitled is the sum which the parties fixed by the original
agreement.   And, again, if the jury should conclude that the
contract was made whereby the purchaser at the price of
thirty dollars was to have been furnished before the 28th
day of February, and that such purchaser was not furnished,
and that the contract was not continued and the time of per-
formance not waived, this instruction calls for a verdict for
the defendants, notwithstanding there is evidence tending to
show that the plaintiff is entitled to recover upon the *quan-
tum meruit*.   Of course, if the contract was continued in
force, and the time of performance waived, a recovery, if any,
would have to be upon the contract, and ᐧnot upon the
*quantum meruit;* but if it was not continued, and expired by
limitation, and the time of performance had not been waived,
then the question would arise, what, if anything, would the
plaintiff be entitled to recover upon the *quantum meruit?*
Under the facts, this question should have been presented to
the jury, but by these instructions it was taken from them.
When there is no express contract, and the plaintiff seeks to
recover for his services, he must show a request.   No re-
covery can be had for a voluntary service.   But a request
may be express, or it may be implied, from all the facts and
circumstances of the transaction, as will hereafter appear.
"Where commissions are not the appropriate mode of com-
pensation, and there is no fixed recompense agreed upon, and
the services are performed under circumstances implying a.
promise to pay for them, the agent will be entitled to receive
such compensation as he may be able to show the services
were reasonably worth."   Reinhard on Agency, section 266,
p. 255.   "The intention to compensate an agent may be im-
plied from the beneficial nature of the service, and when a
party knows that services are being performed for him by
another and makes no objection thereto, and then receives
the benefit thereof, he will be compelled to pay for such ser-
vices what they are reasonably and fairly worth." *Chadwick*
v. *Knox*, 21 N. H. 226; *Hatch* v. *Purcell*, 21 N. H. 544; 1
Am. & Eng. Ency. Law, (2d Ed.) 1096–7, and cases cited.

"If a person acts as agent without authority, and his acts are ratified, he is entitled to compensation just as though he had been duly authorized." 1 Am. &. Eng. Ency. Law, (2d Ed.), 1101. "Ordinarily, if one man labors for another, or renders him services in his business, from which the latter derives a benefit, and the one who receives the service stands by and sees what is done without making objection, he is estopped to deny that the services were rendered at his request." Reinhard on Agency, section 63. *Blossom* v. *Cannon*, 14 Mass. 172; *Guild* v. *Gould*, 15 Pick. (Mass.) 139.

Instruction number three, in effect, tells the jury that if they should believe from the evidence that the defendants Maxwell and Cunningham made sale of an undivided interest in the land to Flint and Loudin, and that they purchased the remaining interest therein, on February 27, 1903, and that thereafter the defendants made no new or additional contract with the plaintiff in reference to the sale, and that the plaintiff did nothing further thereabout after February 27 except to introduce to Maxwell and Cunningham, E. E. and F. C. Wheeler, who later purchased the land, that then the plaintiff under the evidence would not be entitled to any compensation in the shape of commissions, and could only recover such sum as the work actually done in making the said introduction was worth, provided a definite amount as to the value of the time and labor in introducing the purchasers should be shown. This instruction undertakes to measure the amount which the plaintiff would be entitled to recover on the *quantum meruit*, and the question is, does it apply the proper rule? The plaintiff was a real estate agent; was so treated by Maxwell and Cunningham when they first approached him in reference to a sale of the land. He is supposed to be familiar with the market, and to be better able to handle matters of this kind than one who had not given his time and attention to it, and in this case he had written letters to various parties, offering this land for sale; he had received several communications in regard to it, and referred them to Mr. Maxwell, and consulted him in reference to it; and on the 11th of March, acting as such agent, he produced these purchasers to Maxwell and Cunningham. Now is it to be said that the compensation to which he is en-

titled is to be measured by the actual time and labor spent in introducing these parties to Maxwell and Cunningham? To so hold would be a misconception of the case. These instructions are too narrow; they do not cover the entire case. If the evidence is such as warrants a recovery in favor of the plaintiff on the *quantum meruit*, he is entitled to such sum as his services as such real estate agent, in making the sale, and under all the circumstances, are reasonably worth. This instruction limits the recovery to the actual introduction of the parties. This, we think, should not have been done.

It is claimed that the defendants admitted liability in the sum of one hundred dollars. This we will not pass upon, as the case must go back for a new trial, and it would not be proper to intimate any opinion upon the weight of the testimony.

The judgment of the circuit court is reversed, the verdict of the jury set aside, and a new trial awarded.

*Reversed and New Trial Granted.*