## Castleman v. Rustenholtz.

(Decided October 26, 1911.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1.  Principal and Agent—Action for Commissions—Instruction.—In an action by an agent to recover commissions for the sale of stock, evidence as to certain items examined and held sufficient to justify the submission of the case to the jury.

2.  Same.—Where the agent claims that he was employed by his principal to sell certain stock on commission, and that he did sell the stock, and the principal denies that the agent was so employed, or that he made the sales, it is error in an action by the agent to tell the jury to find for the plaintiff, if they believe from the evidence that the plaintiff performed the services for which he claimed compensation. In such a case the question of employment and whether or not plaintiff's efforts were the procuring cause of the sale should be submitted to the jury.

PRYOR & CASTLEMAN for appellants.

CHATTERSON & BLITZ for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

The plaintiff, H. E. Rustenholtz, brought this action against Samuel T. Castleman to recover $20 borrowed money and $475 balance due as commissions on the sale of International Recording Company stock. In para-

graph one the petition alleges that the defendant, on January 1st, 1909, borrowed of plaintiff the sum of $20 which defendant agreed and promised to pay, but had failed and refused to do so although payment had been frequently demanded of him. In paragraph two plaintiff charged that the defendant employed him as agent to sell certain shares of stock in the International Recording Company, and agreed to pay him a commission of fifty per cent. upon all sales made by him. In pursuance of this agreement he sold certain shares of stock to one Charles Wiggonton, the commissions upon which amounted to $35. Of this amount only $10 was paid. In paragraph three plaintiff charges that the defendant employed him as agent to sell certain shares of the capital stock of the International Recording Company, and agreed to pay him fifty per cent. of all sales of said stock at the fixed price of ten cents per share; that under said agreement he procured a purchaser of said shares of stock in the person of A. J. Owens, who purchased from the defendant certain shares of stock at the agreed price of $1,000; that there was due and owing to plaintiff under said agency contract and on said sale the sum of $500, of which $50 had been paid, leaving a balance due of $450. Defendant filed an answer denying the allegations of each paragraph of the petition. He subsequently filed an amended answer in which he alleged that the only $20 he ever borrowed from plaintiff was repaid. He also pleaded that the only transaction he had had through the agency of plaintiff with one Charles Wiggonton was on or about September 15th, 1908, when Wiggonton purchased 100 shares of stock, and that the commissions and compensation due plaintiff for said sale was fully paid. He further pleaded that the only transaction he had with A. J. Owens through the agency of plaintiff was the sale to said Owens of 2,333 shares of stock, and that plaintiff's commissions on this transaction had been fully paid. A jury trial was had, which resulted in a verdict and judgment in favor of plaintiff for the sum of $350. The defendant appeals.

The errors relied upon are (1) the failure of the court to award defendant a peremptory instruction, and (2) the failure of the court to properly instruct the jury.

Plaintiff testifies to the fact that the defendant borrowed the $20 from him and that it had never been paid. The defendant had no recollection whatever of the trans-

action. One of his witnesses, however, testifies that the money was borrowed, and that he himself repaid it to the plaintiff the next day. Here the determination of this item depends upon the credibility of the witnesses. There being evidence both ways, this item was properly submitted to the jury.

As to the Wigginton item, it appears that plaintiff did sell certain shares of stock to him. The defendant, however, produced a check for $46.80, payable to plaintiff, which plaintiff had cashed. In the body of the check was the following: "For Commission on Wiggonton." Plaintiff admits that he received and cashed this check, but claims that he made other sales to Wiggonton, and that the check must have been given in payment for commissions on these sales, and not for commissions on the transaction sued on. With the evidence in this shape, the Wiggonton item was properly submitted to the jury.

Concerning the commissions on sales to Owens, it is the contention of defendant that he employed plaintiff to sell only about $3,000 shares of the stock in question, and that Owens bought these shares through the agency of plaintiff. The commissions on these sales were fully paid. The first sale was of 1,000 shares, and plaintiff admits he received $50. The second sale of 2,333 shares was made the next day. Defendant produces a check for $95 payable to plaintiff's order and indorsed by him, showing that he received the money. In addition to this the defendant testifies that the balance due, $5, was retained by him in payment of a loan which he had made to plaintiff. As to these items, it not being shown that the check was given for any other purpose, we think the plea of payment was fully made out, and that the question of commissions due for the sale of the 3,000 shares to Owens should not have been submitted to the jury.

As to the remaining 7,000 shares of stock, it is defendant's claim that he never employed plaintiff to make the sale, but, on the contrary, he himself made the sale to Owens several weeks after the first transaction. In this connection it is insisted that plaintiff failed to show that he was defendant's agent, or that his efforts were the procuring cause of the sale. It is admitted that plaintiff was not present when the last sale was made to Owens; so his case rests entirely upon the terms of his employment. Plaintiff testifies that Castleman called him to his office and told him he had several thousand

shares of stock for sale, which he was willing to sell at ten cents per share and give plaintiff half. At that time he had 3,000 shares. Plaintiff went across the street and found A. J. Owens and introduced him to the defendant. Owens told defendant he would take a thousand shares then, and maybe more later on. Owens gave defendant a check for $100, and defendant gave plaintiff $50. Further on plaintiff testifies as follows: "I went back to the office with Mr. Castleman. He said he had ten thousand shares in all he could get hold of; he said 'If we sell this we will go in half—understand if you get 25 cents I am to get half.' That afternoon Owens went back and got two thousand shares more, gave his check for $200; I understood I was to get half on the other shares of stock. In all he bought ten thousand shares. Of course, I didn't see that transaction, but whatever was bought I was to get half." Owens testified that Rustenholtz told him that he could get the 7,000 shares, and that Castleman had said to him that Rustenholtz told him (Castleman) that he (Owens) wanted some more. Here, then, we have the plaintiff testifying that Castleman had said he had 10,000 shares and if they sold that they would go in half, and that he understood that he was to get half on the other shares of stock. We also have evidence to the effect that Rustenholtz told Owens he would get some more, and that Castleman stated to Owens that Rustenholtz had told him that Owens would take some more. We think this evidence was sufficient to justify the submission of the case to the jury on the question whether or not plaintiff was employed to sell 10,000 shares of stock, and whether or not his efforts were the procuring cause of the sale.

The court instructed the jury as follows:

"1. If you believe from the evidence that the plaintiff, H. E. Rustenholtz, loaned the money and performed the services for which he claims compensation in this action, you will find for the plaintiff on such sums as you find for him, unless you believe from the evidence that the sums have been paid by the defendant, or unless you believe that the services were not rendered.

2. If you find from the evidence that the money was not loaned or the services were not rendered, or if you find from the evidence that the defendant has paid those items, then as to such items you will find for the defendant."

These instructions do not properly present the law of the case. They simply leave to the unguided judgment of the jury the determination of the issues involved. They assume the plaintiff was defendant's agent, and authorized a recovery without regard to the terms of plaintiff's employment or whether his efforts were the procuring cause of the sales. If, as a matter of fact, the defendant employed plaintiff to sell only the first three thousand shares, and he himself subsequently sold the 7,000 shares to Owens as a result of his own efforts and without the intervention of plaintiff, the latter is not entitled to recover commissions on the 7,000 shares sold. If, on the other hand, the defendant employed plaintiff to sell 7,-000 shares and plaintiff's efforts were the procuring cause of the sale thereof to Owens, then plaintiff is entitled to recover commission on said sale.

Judgment reversed and cause remanded for a new trial consistent with this opinion.